IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DOUGLAS EDWARD HOLMES, JR. 338790 *
       Plaintiff,
v.                               *    CIVIL ACTION NO. DKC-10-504

CORRECTIONAL MEDICAL SERVICES    *
MARYAM MESSAFORROSH, PA
BRUCE FORD, PA                    *
EASTERN CORRECTIONAL INSTITUTION
                 Defendants.     *
                                      ***

**MEMORANDUM OPINION**

PROCEDURAL HISTORY

Douglas Edward Holmes Jr. ("Holmes") filed this 42 U.S.C. § 1983 prisoner civil rights action seeking compensatory and punitive damages. The Complaint alleges that a sports-related left ankle fracture, sustained during the course of a February 2007 football game, was neither correctly diagnosed nor treated initially. Holmes complains when he receive an x-ray and accurate diagnosis a month after the injury, he was not provided pain medication or "treated in any other way for my injury." Paper No. 1. Attached to the Complaint is an administrative remedy filed on March 19, 2009, where Holmes complained that he continues to experience pain and restricted movement due to his ankle fracture and requested the Warden's intervention to ensure he receive necessary medical treatment. *Id.*

State Defendant Eastern Correctional Institution ("ECI") and Medical Defendants Correctional Medical Services, Inc. ("CMS"), Ford, and Messforosh[1] have file dispositive motions (Paper Nos. 15 & 20) and Holmes has filed his "Rebuttals" thereto. Paper Nos. 19 & 22. The

---

[1] The docket shall be modified to correctly reflect the spelling of Defendant Maryam Messforosh's name.

Motions may be determined on the papers without hearing. *See* Local Rule 105.6. (D. Md. 2010). For reasons to follow, the dispositive motions shall be granted.

STANDARD OF REVIEW

Fed. R. Civ. P. 56(c)(2) provides that summary judgment:

> should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to....the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia,* 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De Lonta v. Angelone,* 330 F.3d 630, 633 (4th Cir. 2003), citing *Wilson v. Seiter,* 501 U.S. 294, 297 (1991). To state an Eighth Amendment claim for denial of medical care, Romero must demonstrate that the actions of Defendants (or their failure to act) amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble,* 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan,* 511 U.S. 825, 837 (1994).

As noted above, the medical condition at issue must be serious. *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992) (no expectation that prisoners will be provided with unqualified access to health care). Proof of an objectively serious medical condition, however, does not end the inquiry. The second component of proof requires "subjective recklessness" in the face of the serious medical condition. *Farmer,* 511 U.S. at 839-40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce,* 129 F.3d 336, 340 n. 2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter …becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virginia Beach Correctional Center,* 58 F.3d 101, 105 (4th Cir. 1995), quoting *Farmer,* 511 U.S. at 844. If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." *Farmer,* 511 U.S. at 844.

3

Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *See Brown v. Harris* 240 F.3d 383 (4th Cir. 2001), citing *Liebe v. Norton,* 157 F.3d 574, 577 (8th Cir. 1998). Mere medical negligence or malpractice does not violate the Eighth Amendment. *See Estelle,* 429 U.S. at 106.

ANALYSIS

Holmes claims that he was initially misdiagnosed and not properly evaluated for his ankle injury and, even after testing showed a fractured ankle, he was not given necessary treatment. In their dispositive motion Medical Defendants CMS [2] and Physician's Assistants ("P.A.") Ford and Messforosh assert that on February 27, 2007, Holmes was evaluated for a complaint of a left ankle injury suffered when someone fell on his ankle during a game of football. Paper No. 20, Ex. A at Mathis Aff. Messforosh's examination revealed that the side of Holmes's ankle was mildly swollen. Holmes denied any tingling or numbness, but complained of increased pain on the lateral aspect of the ankle. *Id*., Ex. A; Ex. B at pgs. 1-2. Messforosh also noted that Holmes's ankle had a full range of motion ("ROM") and that the pulse was "palpable, steady, and strong." He perceived no dislocation of Holmes's ankle and prescribed Motrin to reduce the pain and inflammation. Messforosh also restricted Holmes's gym, courtyard, and other activities and advised Holmes to keep off his foot and to follow-up in five days. Paper No. 20, Ex. A; Ex. B at pgs. 1-3.

On March 5, 2007, P.A. Ford saw Homes for a follow-up evaluation of his left ankle injury. Ford noted that Holmes complained of mild pain in his ankle that was gradually improving and

---

[2] CMS argues that as a corporate entity, it cannot be held liable under § 1983. It is well settled that a claimant may not recover against a municipality on a *respondeat superior* theory under § 1983. *See Monell v. Dep't of Social Services,* 436 U.S. 658, 690-695 (1978). To the extent the Complaint names CMS solely upon vicarious liability, circuit law is clear. Principles of municipal liability under § 1983 apply equally to a private corporation. Therefore, a private corporation is not liable under § 1983 for actions allegedly committed by its employees when such liability is predicated solely upon a theory of *respondeat*

relieved by ibuprofen. Ford observed that Holmes was able to walk with a normal gait and had good pulses and neurological function in his left foot. He advised Holmes that he suspected a possible strain or sprain, but could not rule out an avulsion fracture without x-rays. Holmes refused an offer for crutches and, therefore, P.A. Ford discontinued Holmes's medical orders for bed rest and feed-in[3] but continued the prescription for 400 mg. of Motrin. Paper No. 20, Ex A at Mathis Aff.; Ex. B at pgs. 4-8.

The Medical Defendants claim that Holmes failed to show up for his March 21, 2007 follow-up appointment. *Id.*, Ex. A; Ex. B at p. 9. On March 26, 2007, Ford evaluated Holmes again for his left ankle injury. *Id.*, Ex. A; Ex. B at p. 10. He noted that Holmes continued to complain of pain and that no x-ray had been taken of Holmes's ankle. Ford also observed that the swelling of Holmes's ankle had decreased and that he had a normal gait. He ordered an x-ray, which was taken on March 28, 2007. On April 5, 2007, the x-ray was read and showed a non-displaced fracture of the lateral malleolus,[4] minimal new bone formation, and overlying soft tissue swelling. *Id.*, Ex. A; Ex. B at pgs. 10-14.

The Medical Defendants claim that Holmes has offered no further complaints about his ankle. They state that because the ankle fracture was stable with no movement of the fracture edges when he walked, no further treatment was needed or required.

In his Opposition Holmes states that Messforosh saw him immediately after his ankle injury on February 27, 2010, and issued a bandage and Motrin for pain. Paper No. 22. He complains that

---

*superior*. *See Austin v. Paramount Parks, Inc.,* 195 F.3d 715, 727-28 (4th Cir. 1999); *Powell v. Shopco Laurel Co.*, 678 F.2d 504, 506 (4th Cir. 1982). The Complaint against CMS shall be dismissed.

[3] The medical Defendants present a Release of Responsibility ("ROR") form showing that Holmes refused bed rest and feed-in on March 5, 2007. Paper No. 20, Ex. B at p. 8.

[4] The lateral malleolus is the protuberance of the inside of the ankle formed by the end of the fibula.

no x-rays were given or ordered and no course of treatment was recommended. Holmes further states that Ford saw him on March 5, 2007, and saw that his ankle was swollen. He alleges that again he was prescribed Motion and no x-rays or course of treatment was given. Holmes states that on March 26, 2007, he was seen by Ford for follow-up and no course of treatment was recommended, but an x-ray was ordered. He contends that the x-ray showed a fractured ankle and no treatment was given or recommended. *Id.* Holmes complains that he has been suffering from this injury for two years and no adequate treatment was ever rendered.

The court finds that medical staff did initially misdiagnose Holmes's ankle injury, but did not act with indifference to his medical needs. His ankle was evaluated by Messforosh soon after his sick-call encounter form was filed. The P.A. found mild swelling and full ROM. Holmes denied tingling or numbness. Messforosh concluded that there was no dislocation and prescribed medication for pain and to reduce inflammation. Holmes was placed on restrictive activity and advised to follow up. Six days later he was seen by Ford, who noted that Holmes offered a subjective statement of mild ankle pain which was improving and alleviated by ibuprofen. Holmes's gait was normal and his left foot had good pulses and neurological function. An offer of crutches was refused. Holmes was seen approximately three weeks later, after having missed one follow-up appointment. Due to Holmes's continued complaints of pain, Ford ordered an x-ray which showed a non-displaced fracture of the malleolus, or the end of the fibula that forms the knot or protruding bone on the inside of the ankle. A minimal amount of new bone formation was shown, along with overlying soft tissue swelling.

The record shows that Holmes was provided physical examinations and follow-up evaluations, pain medication, and x-rays. At the end of the day, the ankle joint and fracture were found to be stable with new bone formation and healthcare personnel found no further treatment was

needed.[5] The court simply cannot find from the medical records before it that the medical evaluations and treatment received by Holmes for a stable ankle fracture that was not displaced to be so outrageous as to constitute an Eighth Amendment violation.

Insofar as he seeks damages against State Defendant ECI, Holmes's Complaint fails for several reasons. First, 42 U.S.C. § 1983 authorizes the imposition of liability against "persons" who, acting under color of state law, subject a citizen to a deprivation of constitutional rights. ECI is a building and not a "person" amenable to suit under § 1983. *See e.g., Powell v. Cook County Jail,* 814 F.Supp. 757 (N.D. Ill. 1993) (jail not subject to suit); *Marsden v. Fed. Bureau of Prisons*, 856 F.Supp. 832, 836 (S.D. N.Y. 1994) ("jail is not an entity that is amenable to suit").

Even if Holmes had named proper persons, the Court would dismiss the Complaint against the state Defendants. As noted by counsel, medical care at the prison is performed by a medical contractor- Defendant CMS- and neither the institution nor its employees perform any role in inmate medical treatment. Consequently, the institution is entitled to rely on the judgment of medical personnel to manage inmate medical treatment. *See Miltier v. Beorn*, 896 F.2d 848, 854-55 (4th Cir. 1990). Further, the State Defendant asserts, and it is not sufficiently rebutted,[6] that Holmes failed to

---

[5] Holmes alleges that he has been "suffering from this injury for 2 years to date." Paper No. 22 at 9. He has, however, failed to rebut the Medical Defendants' affirmation that he offered no further complaints regarding his continued pain after March 2007.

[6] Defendant ECI argues in supporting declarations that there is no record that Holmes filed an administrative remedy at the institution, Headquarters, or Inmate Grievance Office levels. Holmes submits that he filed a grievance at the institution level. This filing, however, is insufficient to demonstrate exhaustion. The PLRA's exhaustion requirement is designed so that prisoners pursue administrative grievances until they receive a final denial of the claims, appealing through all available stages in the administrative process. *See Chase v. Peay*, 286 F.Supp.2d 523, 530 (D. Md. 2003). In Maryland, filing a request for administrative remedy with the Warden of the prison in which one is incarcerated within thirty calendar days of the incident (or of the date the inmate first gained knowledge of the incident or injury) is the first of three steps in the ARP process provided by the DOC to its inmates. If this request is denied, the inmate has thirty calendar days to file an appeal with the Commissioner of Correction. If this appeal is denied, the prisoner has thirty days in which to file an appeal to the Executive Director of the IGO. *See* Division of Correction Directive 185-002.VI.L-N; *see also* Md. Code Ann. Corr. Serv. §§ 10-201 to 10-209.

satisfy administrative exhaustion requirements under the Prison Litigation Reform Act or 42 U.S.C. § 1997e (a). Paper No. 15 at Miller and Oakley Decls.

## CONCLUSION

For the aforementioned reasons, Defendants' Motions, construed as motions for summary judgment, shall be granted. A separate Order follows.

Date: October 12, 2010            _____/s/_____
                                                          DEBORAH K. CHASANOW
                                                          United States District Judge